The **STATE of Ohio [City of Portsmouth], Appellee,**

**v.**

**MAYNARD, Appellant.**

[Cite as *State v. Maynard* (1996), 110 Ohio St.3d 6.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 94CA2318.

Decided March 21, 1996.

*Richard W. Campbell,* Portsmouth City Prosecutor, for appellee.

*J.B. Marshall, Jr.,* for appellant.

STEPHENSON, Judge.

This is an appeal from a judgment of conviction and sentence entered by the Portsmouth Municipal Court, upon a jury verdict finding Keith Maynard, defendant below and appellant herein, guilty of the offense of resisting arrest in violation of Portsmouth City Ordinances 525.09, which is identical to R.C. 2921.33, a second degree misdemeanor.

The following errors are assigned:

First Assignment of Error

"The trial court erred and abused its discretion by not dismissing the complaint for resisting arrest or entering a verdict of acquittal for the same, after entering

a judgment of acquittal for the charge of disorderly conduct or persistence in disorderly conduct."

Second Assignment of Error

"The trial court erred in not permitting this attorney to argue, in front of the jury, what a 'lawful arrest' was and, further, did not instruct the jury on what a 'lawful arrest' is and, thereby, abused its discretion."

Although vigorously disputed by appellant's evidence, the prosecution presented evidence tending to establish the following facts. At approximately 1:00 a.m. on May 1, 1994, a complaint was received from one Melanie Hutchinson that appellant had threatened her by using a knife and threatened to shoot one of her children. This information was furnished to the city of Portsmouth policemen Lynn Brewer and Jerry B. Leach, who were dispatched to the Wayne Hills apartment complex. The officers interviewed the complainant, and she asked that they accompany her to a friend's apartment.

Another tenant complained to the officers about loud music coming from the apartment of Sam Journey. Hutchinson advised the officers that the appellant was in the Journey apartment. The officers knocked on the door of that apartment and requested permission to enter, which was granted by Journey. Officer Leach testified as follows:

"Q. And what happened once you got into the apartment?

"A. We stepped inside. We began talking to Mr. Journey. Um, the defendant started yelling if you don't have a fucking warrant, excuse my language, get out.

"Q. Okay. How many times?

"A. Several times. I don't recall exactly how many times he said it.

"Q. What else did he say?

"A. Um, he just kept telling us to get out of the apartment, that if * * * we'd asked him if he was a resident there and he said no, he was just visiting.

"Q. Okay. And what happened at that point?

"A. Uh, he continued to be beligerent [sic]. We tried to calm him down and explain why we were there. Mr. Journey also tried to get him to calm down and then a female came in the room, into the kitchen area where we were at and also asked him to calm down.

"Q. Okay. Did you or Officer Brewer ask to see his ID at any point in the apartment?

"A.   After he had been beligerent [*sic*] for a while, yes, we asked him his name.   He said he wasn't going to tell us his name or something along those lines.   We asked to see some type of ID.

"Q.   Okay.   And did he produce ID in the apartment?

"A.   No, sir.

"Q.   Okay.   Then what happened?

"A.   He continued to be beligerent [*sic*] and refused to calm down.   He was shouting profanities.   We advised him he was under arrest and he started struggling with us."

The officers testified that appellant struggled with them in attempting to arrest him and move him into the police cruiser.   The appellant was maced in the struggle.   However, at no time, either in or outside that apartment, did the appellant threaten harm to the officers.

Appellant was charged with the offense of disorderly conduct, the complaint reading as follows:

"[O]n or about the *1st* day of *May* A.D., *1994,* at the County and State aforesaid one *Keith Maynard* recklessly inconvenienced, annoyed or alarmed others by engaging in violent or turbulent behavior, or by communicating unwarranted and grossly abusive and profane language, and did persist in such disorderly conduct after reasonable warning or request to desist.   Said offense occurring at 1921 G. Thomas Ave. at about 0108 hrs., using annoying and abusive language and refusing to calm down.

"In violation of Section 509.03(a) of the Codified Ordinances of the City of Portsmouth, Ohio." [1]

Appellant was also charged with the offense of resisting arrest, the complaint reading as follows:

"Keith Maynard * * * recklessly resisted * * * his lawful arrest, to wit:  when being placed under arrest for persistence in disorderly conduct, started struggling with officers and fighting them while officers were trying to handcuff him

---

1.   Portsmouth City Ordinance 509.03 reads as follows:

"(a) No person shall recklessly cause inconvenience, annoyance or alarm to another by doing any of the following:

"(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;

"(2) Making unreasonable noise or offensively coarse utterance, gesture or display, or communicating unwarranted and grossly abusive language to any person, which by its very utterance or usage inflicts injury or tends to incite an immediate breach of the peace;

"(3) Insulting, taunting or challenging another, under circumstances in which such conduct is likely to provoke a violent response."

they got him outside the apt. at 1921 Thomas Ave., Portsmouth, OH, where he continued to struggle and had to be maced. Said offense occurring at about 0108 hrs. in violation of Sec. 525.09 of the Codified Ord of the City of Ports, OH." [2]

At the close of the prosecution's evidence, appellant moved for a directed verdict upon both the charge of disorderly conduct and resisting arrest. The court heard arguments and sustained the motion as to the disorderly conduct offense. The court, in light of the evidence, apparently relied principally upon the decision of the court in *State v. Lamm* (1992), 80 Ohio App.3d 510, 513, 609 N.E.2d 1286, 1288, wherein we upheld a trial court's finding of lack of probable cause to arrest for disorderly conduct.

The court overruled the motion as to the resisting arrest charge and submitted that offense to the jury, which found appellant guilty. Appellant argued below, as he does here, that an essential element of the resisting arrest offense is that the arrest must be lawful, as is expressly set forth in the ordinance. Appellant's argument is well taken. It appears to be settled that the prosecution must prove that the arrest was lawful. *Hoover v. Garfield Hts. Mun. Court* (C.A.6, 1968), 802 F.2d 168; *State v. Johnson* (1982), 6 Ohio App.3d 56, 6 OBR 268, 453 N.E.2d 1101. This court so held in *Lamm, supra.*

The lawfulness of the arrest is not determined by whether the defendant is convicted at trial. Thus, the prosecution need not prove at trial the guilt of the defendant beyond a reasonable doubt, in determining if an arrest is lawful. *Coffel v. Taylor* (S.D.Ohio 1978), 8 O.O.3d 253. However, for the arrest to be a "lawful arrest" as that term is used in the ordinance, there must be probable cause by the evidence of reasonable grounds for the arrest.

The officers had to believe that appellant was recklessly causing inconvenience, annoyance, or alarm to them by his abusive language *and* that his language and conduct was likely to provoke a violent response. *Johnson, supra.*

In *Lamm, supra*, we stated the following:

"A person may not be punished for speaking boisterous, rude or insulting words, even with the intent to annoy another, unless the words by their very utterance inflict injury or are likely to provoke the average person in an immediate retaliatory breach of the peace. *Cincinnati v. Karlan* (1974), 39 Ohio St.2d 107, 110, 68 O.O.2d 62, 64, 314 N.E.2d 162, 164; *State v. Hoffman* (1979), 57 Ohio St.2d 129, 11 O.O.3d 298, 387 N.E.2d 239. See, also, *Chaplinsky v. New Hampshire* (1942), 315 U.S. 568, 573, 62 S.Ct. 766, 770, 86 L.Ed. 1031, 1036.

---

2. Section 525.09(a) reads as follows:

"No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another."

That is, the words spoken must be 'fighting words.' *State v. Wylie* (1984), 19 Ohio App.3d 180, 19 OBR 287, 482 N.E.2d 1301." 80 Ohio App.3d at 513, 609 N.E.2d at 1288.

The issue thus resolves into the question of whether appellant's conduct and words used were likely to provoke the police officers to a retaliatory breach of the peace. Appellee argues that there were other persons in the apartment who could have been alarmed and that there had been an unverified report of a gun and a violent response would have been necessary if a weapon had been produced. However, the focus is on whether the *language used* was fighting words inviting a violent response.

Given that no threats of physical injury were made against the officers, we conclude that our observation in *Lamm* applies with equal force in the case *sub judice:*

"While we do not condone the use of profanity or disrespect towards police officers, we are persuaded that the evidence presented failed to establish that the words uttered by appellee were likely to inflict injury or provoke the average person to an immediate retaliatory breach of the peace. Furthermore, there was no evidence that the people gathered outside were alarmed, annoyed or inconvenienced by appellee's conduct. Accordingly, the trial court did not err in its finding that there was no probable cause for appellee's arrest for disorderly conduct." *Id.* at 514, 609 N.E.2d at 1289.

In *State v. Sansalone* (1991), 71 Ohio App.3d 284, 593 N.E.2d 390, the court held that the conduct of a defendant in telling a police officer, "Well, you are an asshole" and later stating, "You're a real asshole" did not provide reasonable cause for an arrest for disorderly conduct under R.C. 2917.11. Since the arrest was not lawful in that case, the defendant was not guilty of resisting arrest under R.C. 2921.33. The court reasoned as follows:

"In the case *sub judice,* appellant was arrested for disorderly conduct. In *Coffel v. Taylor* (S.D.Ohio 1978), 8 O.O.3d 253, the federal district court described the circumstances under which a resisting-arrest charge made pursuant to R.C. 2921.33 would be justified in conjunction with a charge of disorderly conduct under R.C. 2917.11. The court in *Coffel* stated that a 'lawful arrest' for disorderly conduct occurs regardless of whether the alleged offender is ultimately convicted if the officer had reasonable grounds to believe that the accused was recklessly causing inconvenience, annoyance or alarm to him by abusive language, and that the individual's language and conduct was likely to provoke a violent response. The court emphasized that the test is objective and that the officer need not in fact be inconvenienced, annoyed or alarmed, or personally provoked to a violent response. The question, instead, focuses on whether, under the circumstances, it is probable that a reasonable police officer would find the

accused's language and conduct annoying or alarming and would be provoked to want to respond violently.

"A review of the record before us reveals that Officer Lucas did not have a reasonable basis to believe that appellant had committed the offense of disorderly conduct. Lucas testified that when he dropped the parking citation into appellant's departing vehicle and she again uttered the word 'asshole,' he then decided to pursue her, not for the purpose of questioning her ability to operate a motor vehicle, but to charge her specifically with disorderly conduct. The record reflects that, at that point in time, appellant had called Lucas an 'asshole' and a 'real asshole,' and had asked him 'if [he] was having a bad day.' While Lucas testified that appellant's remarks were uttered in a 'loud' tone and that he was 'offended' by her comments, the record is devoid of any indicia that any reasonable person would have found appellant's language alarming or annoying so as to provoke the immediate violent response or retaliatory breach of the peace required by *State v. Hoffman* (1979), 57 Ohio St.2d 129, 11 O.O.3d 298, 387 N.E.2d 239." *Id.* at 286, 593 N.E.2d at 391–392.

In *Hoffman, id.,* the Ohio Supreme Court held in the first paragraph of the syllabus as follows:

"A person may not be punished under R.C. 2917.11(A)(2) for 'recklessly caus[ing] inconvenience, annoyance, or alarm to another,' by making an 'offensively coarse utterance' or 'communicating unwarranted and grossly abusive language to any person,' unless the words spoken are likely, by their very utterance, to inflict injury or provoke the average person to an immediate retaliatory breach of the peace. (*Cincinnati v. Karlan* [1974], 39 Ohio St.2d 107 [68 O.O.2d 62, 314 N.E.2d 162], followed.)"

To the extent and for the reasons above set forth, the first assignment of error is sustained, and final judgment is entered in favor of appellant. The second assignment of error is, thus, overruled as moot.

*Judgment reversed.*

PETER B. ABELE, P.J., and HARSHA, J., concur.