Appellant David Rothacker appeals the decision of the trial court convicting him of menacing and disorderly conduct and sentencing him accordingly. Rothacker assigns the following two errors for our review:
 I. THE EVIDENCE IS CONSTITUTIONALLY INSUFFICIENT TO SUSTAIN A CONVICTION OF DISORDERLY CONDUCT R.C. § 2917.11.
 II. THE EVIDENCE IS CONSTITUTIONALLY INSUFFICIENT TO SUSTAIN A CONVICTION OF MENACING R.C. § 2903.22.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
The City of Westlake charged David Rothacker with two counts of disorderly conduct and one count of menacing. These charges stemmed from two confrontations between Rothacker and Westlake schoolteacher Julie Milkie. Milkie taught Rothacker's daughter, Lisa, a former student of Milkie's at Westlake Middle School, and in Milkie's class for the severely behaviorally handicapped.
On November 18, 1996, Rothacker brought Lisa to the office of Westlake Middle School in order to inquire about re-enrolling her at the school. Julie Milkie entered the office, saw Lisa, and said "hello" to her. Rothacker turned around and began yelling at Milkie. At Rothacker's trial, Milkie gave the following account of the incident:
 And immediately when I said "hi" to her, Mr. Rothacker turned around and was in my face screaming, calling me a bitch and an asshole, saying things like, "I refuse to have her in that classroom." My first response to him was, "We are in a school. Watch your language." And that got him anger. (sic) And he was right here and then, you know, "You won't talk to me like that." And he kept going on and on. And I went to leave, and opened the door and he was right behind me. He said, "Stay away from Lisa or else."
(Tr. 56.)
Thereafter, Milkie went to the principal's office and told him what had happened. The following day, Milkie reported the incident to police. She testified that the incident was very upsetting, leaving her near tears.
The first incident was witnessed by two school secretaries, Beth Hollick and Sheryl Hagley. Hollick testified that she heard Rothacker call Milkie a bitch and tell her to stay away from Lisa. Hagley stated that she heard Rothacker call Milkie a bitch and heard him say he didn't want Milkie talking to Lisa. Both women testified that they were alarmed by the incident but admitted that they were not alarmed enough to call the police or to call the principal. Hollick stated that she feared for her safety because she knew Rothacker was not fond of Milkie.
The second incident occurred on December 16, 1996 in the school cafeteria. Milkie described that incident as follows:
 I was in the commons area, which is the cafeteria area — there is a doorway there — and I was in the commons area working on Christmas decorations for students. And my back was to the door, and I hear the word "bitch." I turn around because I thought it was a student that I would have to intervene in a student conflict and it was Rothacker. And he was walking toward the office looking right at me calling me an evil bitch; he repeated it, "Evil bitch." "Evil bitch." And then he said, "bitch, better watch out."
(Tr. 63.)
Milkie testified that she was very "deathly afraid" and was afraid of being hit or raped. She suffered from nightmares and described the incident as "terrifying." She also testified that her husband bought her a cellular phone because they were shaken up by the incident, and that she rode to work with her husband because she was afraid to return to her car in the parking lot after dark. The school board obtained a security guard to stand outside her classroom door.
The trial court found Rothacker guilty of all charges. For the menacing charge, Rothacker was assessed a $200.00 fine and was sentenced to 30 days in jail with 25 days suspended conditioned on probation. For the disorderly conduct charges, he was assessed a $50.00 fine and sentenced to 30 days in jail with 25 days suspended conditioned on probation. Rothacker successfully moved for suspension of his sentence upon payment of a $2000 appeal bond. This appeal followed.
In his first assignment of error, Rothacker challenges the sufficiency of the evidence presented in support of his conviction for disorderly conduct. Section 509.03 of the Westlake Codified Ordinances defines disorderly conduct as follows:
 No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following: (1) engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior; (2) making unreasonable noise or an offensively coarse utterance, gesture, or display, or communicating unwarranted and grossly abusive language to any person; (3) insulting, taunting, or challenging another, under circumstances in which such conduct is likely to provoke a violent response
Rothacker was charged under subsection (2) which prohibits making unreasonable noise or an offensively coarse utterance, gesture, or display, or communicating unwarranted and grossly abusive language to any person. In convicting Rothacker, the trial court held:
 [T]he court finds that the language herein progressed beyond the point of Constitutional protection because the language was threatening * * *.
The court also held that Rothacker "stepped beyond the bounds of protected speech and into an area where his words and conductthreatened physical harm to Ms. Milkie" and that Rothacker' s "language, words, body language and the fact he was inside a school and boldly and brazenly got in Ms. Milkie's face as she stood outside her classroom with a student demonstrate that he was hell— bent on his mission of frightening her."
The language of the court's analysis suggests that the court applied subsection 1 of Westlake Codified Ordinance Section509.03 (a) which prohibits engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior. However, the indictment specified that Rothacker was being charged under subsection 2 and the court's opinion makes no reference to subsection 2's requirement that, in order for words to constitute disorderly conduct, they must be "fighting words."
Generally, something more than mere profanity is required to constitute fighting words. City of Chillicothe v. Lowery (July 13, 1998), Ross App. No. 97CA2331, unreported, appeal dismissed (1998),84 Ohio St.3d 1408. However, coarse epithets spoken in public and intentionally directed toward a particular person have been held to constitute fighting words under R.C. 2917.11 (A) (2). Cincinnati v.Karlan (1974), 39 Ohio St.2d 107 at paragraphs 2 and 3 of syllabus, certiorari denied (1974), 419 U.S. 1056; City of Shaker Heights v.Marcus (Feb. 4, 1993), Cuyahoga App. No. 61801, unreported, appeal dismissed (1993), 67 Ohio St.3d 1409; City of Youngstown v. Teague
(Jan. 9, 1992), Mahoning App. No. 90 CA 114, unreported, jurisdictional motion overruled (1992), 64 Ohio St.3d 1408; City ofCleveland v. Smith (Oct. 28, 1993), Cuyahoga App. No. 62560, unreported.
In this case, Rothacker did more than use profanity. He confronted Milkie in a small office and directed his verbal onslaught at her specifically. Milkie described the first incident as follows:
 [W]hen I first said, "Hi" to Lisa, his back was to me, I would imagine talking to the secretaries. He turned around to face me. It's a small area. But even in a small area, he got even closer to me that he was just right there.
(Tr. 59.)
Milkie also stated that, in the second incident, Rothacker was looking right at her while calling her an "evil bitch."
 When I turned around to look to see who it was, I looked at him. And he called me an evil bitch. I was — once I knew who it was, and he said, "evil bitch better look out," I knew that's what he means, so I'm out of the room. I didn't stay and, you know, have a [conversation] with him.
(Tr. 85.)
In Lowery, the court recognized that a disorderly conduct conviction was proper when the offender used profane language in a situation that likely could have become violent. The court cited the example that the situation could have become violent when the offender's profane language relates his desire to inflict harm upon the listener. Lowery citing State v. Baker (Sept. 19, 1989), Marion App. Nos. 9-88-8 and 9-88-9, unreported.
Beth Hollick, who witnessed the first incident, testified that she was afraid for her safety during the incident and that she cringed to think of what might happen because she knew Rothacker was not fond of Milkie. She also stated that the office personnel was in a position to hear most of what was going on in the school and that the animosity Rothacker had for Milkie had been the subject of some conversation over the years. The language used by Rothacker in both incidents was threatening. Under the circumstances and, in view of the decisions in Lowery and Baker, we conclude that there was sufficient evidence to support Rothacker's convictions for disorderly conduct. Rothacker's first assignment of error is overruled.
In his second assignment of error, Rothacker challenges the sufficiency of the evidence presented in support of his conviction for menacing. R.C. 2903.22 defines menacing as follows:
 (A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of such other person, such other person's unborn, or a member of the other person's immediate family.
"Whether a threat sufficient to invoke a charge of menacing has been made is a question of fact and one to be determined by the trier of fact." State v. Kerr (Nov. 1, 1996), Montgomery App. No. 15648, unreported. When reviewing the sufficiency of evidence presented in support of a menacing conviction, we must view the evidence presented in the light most favorable to the prosecution and determine if a reasonable factfinder could have found all the elements of the offense beyond a reasonable doubt. City ofCleveland v. Petronzio (Mar. 21, 1996), Cuyahoga App. No. 69340, unreported. In order to convict a person of menacing, the prosecution must show that the defendant knowingly caused another to believe that the defendant would cause physical harm to that person. City of Fairview Park v. Cianci (June 16, 1994), Cuyahoga App. No. 65546, unreported. See also State v. Hiles (June 24, 1996), Delaware App. No. 96-CA-C-02-09, unreported.
In this case, Julie Milkie testified she was so upset by the incident that she suffered from nightmares and was "deathly afraid" of being attacked by Rothacker. She testified that she suspected Rothacker of physically abusing his daughter, Lisa, and felt that if he could assault his daughter, then he could assault her as well. She took steps to protect herself including carrying a cellular phone, having a security guard posted outside her classroom and riding to work with her husband out of fear that Rothacker would confront her in a dark parking lot as she returned to her car after school. We conclude that the prosecution produced sufficient evidence at trial from which a reasonable factfinder could conclude that Rothacker made threatening remarks to Milkie and that Milkie was placed in fear of her safety by those remarks. Rothacker's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Rocky River Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J., CORRIGAN. J., CONCUR.
TERRENCE O'DONNELL. P.J., CONCURS IN PART AND DISSENTS IN PART. (SEE ATTACHED CONCURRING AND DISSENTING OPINION.)
 ______________________________ PATRICIA ANN LACKNON, JUDGE